NEWBERGER COTTON CO. *v.* ILLINOIS CENTRAL RAILROAD CO.

1. RAILROADS.   *Carriers of freight.   Insurers.   Contracts limiting liability for loss by fire.*

It is competent for a railroad company to contract with a shipper of goods, restricting its common law liability as an absolute insurer, and exempting itself from liability from an accidental fire, not caused by its negligence; but such contract must be deliberately and fairly assented to by the shipper.

2. SAME.   *Loss by fire.   Prima facie liable.*

If freight is destroyed by fire while in custody of a common carrier, the loss is *prima facie* attributable to its negligence, and the owner who sues therefor is entitled to recover, even if by contract he has exempted the company from liability as an absolute insurer, unless the carrier show that the loss was not caused by its negligence.

3. SAME.   *Pleadings.   Proofs.*

If a declaration against a common carrier of freight demands recovery from it as an absolute insurer, and the loss of the property by fire be shown, the court should not peremptorily instruct for defendant, upon evidence of a contract exempting it from common law liability as an absolute insurer, in the absence of proof showing that the loss was not caused by defendant's negligence.   In such case the plaintiff's *allegata* are broader than the *probata;* but the case made out *prima facie* is embraced by the declaration.

FROM the circuit court of Holmes county.

HON. W. F. STEVENS, Judge.

The Newberger Cotton Company sued the railroad company for the value of cotton bales belonging to plaintiff, and which had been delivered for shipment to the defendant, and which, after being loaded into a box car, were destroyed by fire, there being nothing to show how the fire originated.   The plaintiff offered in evidence a bill of lading for the cotton, which, by its terms, exempted the carrier from liability for an accidental fire.   This bill of lading was not delivered until after the burning of the

cotton. The amended declaration charged the carrier with liability as an absolute insurer, and differed from the original one in that it did not charge negligence on the defendant.

*Noel & Pepper,* for appellant.

"In the case of goods and other chattels, the object is either inanimate or without reason and volition, is delivered to the carrier, and wholly within his power. It is mainly because he has absolute control over it, that he becomes an'insurer of it for safe-keeping and delivery, from which nothing will discharge him but casualties by the act of God, or the public enemy, or the undue interference of the owner." *Southern Railroad Co.* v. *Kendrick,* 40 Miss., 374. "In this state it is settled that a contract by which a common carrier stipulates for exemption from liability for losses occurring from his own negligence of any grade, is against public policy and void." *Whitesides* v. *Thurlkill,* 12 Smed. & M., 599; *Express Co.* v. *Moon,* 39 Miss., 822; *Railroad Co.* v. *Weiner,* 49 Miss., 725; *Railroad Co.* v. *Faler,* 58 Miss., 911; *Chicago, etc., Railroad Co.* v. *Moss,* 60 Miss., 1003. "The true rule is, that the burden is on the railway company claiming exemption from liability under a special contract, to prove that the loss or damage resulted from one or more of the excepted causes of the contract, and without fault of the railway servants." *Johnson* v. *Railway Co.,* 69 Miss., 191.

The peremptory instruction granted in this case, practically overrules the doctrine that the burden of proof is upon the railroad company when it relies upon a special contract exempting it from common law liability as an insurer, to prove that the contract was actually made, that the loss was without any negligence on its part, and within the excepted clause, which is held to be the law in the following cases, among others: *M. & O. Railroad Co.* v. *Weiner,* 49 Miss., 725; *Railroad Co.* v. *Faler,* 58 Miss., 911; *Railroad Co.* v. *Moss,* 60 Miss., 1003; *Railroad Co.* v. *Ables,* 60 Miss., 1017; *Johnson* v. *Railway Co.,* 69 Miss., 191.

*McClurg & Flowers*, for appellee.

No proposition is better understood as the settled law of this state, than that a railroad company may lawfully make a contract exempting itself from loss by fire not the result of its own negligence. It may not exempt itself from any and all loss by fire, but it may protect itself against all fires save those which are the result of its own negligence. The action was founded on contract, evidenced by the bill of lading introduced on the trial by the plaintiff, and which, in legal contemplation, was a part of the declaration, because both the law and the contract itself made it so. The law was that such a contract was permitted, and the contract, brought forward and introduced by the plaintiff, showed indisputably that it had been made. Ray, in his recent excellent work on Imposed Duties on Freight Carriers, page 188, declares the rule to be, that where it clearly appears that the loss is occasioned by an excepted peril, the party alleging negligence must produce proof in support of his averment, and that in case of special contract limiting the liability, the burden of proof of negligence is on the shipper. "Where a loss occurs which is within an exception in the bill of lading, it is the duty of the shipper, if he seeks a recovery, to show that the loss was the result of the carrier's negligence." The author says that the preponderance of authority is in support of this rule, and he cites many authorities in support of his proposition that negligence is a positive wrong, and will not be presumed, though it may be inferred from circumstances, and liability can only be imposed by affirmative proof establishing negligence, which excludes the carrier from the benefit of an exemption which has *prima facie* released him.

*Mayes & Harris*, on same side.

Assuming, as we think we safely may, that the railroad company could contract against loss by accidental fire, and in this case would not be liable if it had so contracted, the only question is, was there such a contract? Is the plaintiff in an atti-

tude to deny this contract? The facts show that during the day the cotton was brought to the depot of the railroad company at various times, and was loaded into a new box car of the company as it arrived, and that it was arriving from seven in the morning until seven in the evening. The cotton was loaded into the box car, and, when the carload was made up, the car was closed and sealed by the depot agent, who afterwards, about twelve o'clock at night, discovered the car to be on fire. The bill of lading, which appears in the record, was not delivered until the following day, but the fact is undisputed —and this is an important one—that the bill of lading, when delivered, was accepted and no objections made thereto, or to any of the stipulations or conditions thereon, from the time it was delivered, which was in September, 1896, to the bringing of the suit, May, 1897.

We call the court's attention here to the nature of a bill of lading. It is spoken of as a contract, although it is only signed by the carrier. "The bill of lading is signed only by the carrier or some one on his behalf, and is usually handed to the shipper on the delivery of the goods to the carrier. Where a shipper, with the knowledge of the contents of the bill, assents to it or accepts its terms, it is a binding contract, and defines the rights and liabilities of the parties, and cannot be contradicted by parol proof." 11 Am. & Eng. Enc. L., 292. So, then, it was not necessary that the shipper or his agent should have signed the bill of lading.

It has been expressly held, in numerous cases, that the assent of the shipper to the terms and stipulations of the bill of lading may be implied from the acceptance of the same by the shipper and his failure to dissent. "Receipt, without dissent, of a bill of lading stipulating against liability for loss by fire, discharges the carrier for the loss not occasioned by its negligence, and the plaintiff will not be heard to say, in the absence of fraud, that he did not read the conditions." 100 Mass., 505; 21 Wis., 154; 16 Mich., 79; 89 N. D., 311; 37 Ala., 247; 38 Conn., 536;

44 Wis., 504; 86 Tenn., 392; 20 Am. Rep., 475; 36 Iowa, 181; 45 Iowa, 470.

In the case at bar there is no pretense that the plaintiffs did not know full well that the defendant's bills of lading contained a stipulation against loss by fire. The bill of lading was delivered to the plaintiff's agents at Lexington; was retained by them without objection; was produced under a notice from the defendants to produce it, after being informed by the pleadings that the defendant would claim immunity under this contract; and, in addition to all this, the plaintiffs themselves offered the bill of lading in evidence as part of their case, and it cannot be now said by them that they did not assent to it, and that it was not a binding contract. The peremptory instruction was properly given in this case. The plaintiffs assented to the contract as delivered to them by the railroad company, and were bound by the stipulations therein exempting the company from loss by fire, and that being so, it is an end to the case. The authorities are to the effect that where the shipper ignores the special contract, and sues upon the common law liability, he will, on proof of the contract—most assuredly where he proves it himself—be nonsuited. *Davidson* v. *Graham*, 2 Ohio St., 131; *Stump* v. *Hutchinson*, 11 Pa., 533; *Ferguson* v. *Chapman*, 6 Harr. & J. (Md.), 394; *Hall* v. *Railroad Co.*, 90 Ind., 459; *Bartlett* v. *Hall*, 94 *Ib.*, 281; 9 Am. & Eng. Ry. Cases, 168; 36 Ohio St., 448.

WHITFIELD, J., delivered the opinion of the court.

It is competent for a railroad company to contract with a shipper restricting its common law liability as an absolute insurer, and exempting itself from liability for a fire accidental, and, as to the action of its employes, non-negligent. But such contract must be "deliberately and fairly assented to" by the shipper, and though so made, the carrier is still liable, unless it meets the burden on it of showing that the fire was not due to its negligence, in any degree, however slight, since it is against

public policy as to public carriers to permit contracts against any negligence on their part.    It is immaterial that the amended declaration sought to charge the appellee with common law liability as an absolute insurer.    Under such a declaration, failure of proof to negative negligence on appellee's part, leaves it liable, because in such case, though the plaintiff may not show liability as an insurer, he does the lesser liability for negligence, embraced in the greater absolute liability as an insurer.    The greater includes the less.    He alleges a greater liability than he proves, but he does prove a liability—when the carrier fails to meet the burden of showing loss from the excepted cause, by negativing loss from its negligence—less than, but embraced in, that alleged.    This is the clear result of our decisions.    *Weiner* v.. *Railroad Co.*, 49 Miss., 725; *Railroad Co.* v. *Faler*, 58 *Ib.*, 911; *Railroad Co.* v. *Moss*, 60 *Ib.*, 1011; *Express Co.* v. *Moon*, 39 *Ib.*, 822.

The solution of this case is thus—conceding the special contract to be void, as to which we say nothing now—resolved into the single question, whether there was evidence that there was negligence on the part of appellee as to the origin of the fire, or in extinguishing it, which required the submission of the case to the jury, and we think there clearly was such evidence.

*Reversed, verdict set aside and remanded.*